[Opinion delivered May 26, 1883.]

---

## A. C. Abacock v. St. Louis Type Foundry.

(Case No. 4003.)

1. Contract — Sequestration.— The plaintiff, who had been the owner of personal property, received from defendant certain notes which were designated in a contemporaneous agreement as having been executed for the rent thereof. The agreement specified that the property was leased to defendant, and that plaintiff might, on the non-payment of any note at maturity, enter and take possession of the property, with or without notice; but it also stipulated that if all the notes were paid at maturity the plaintiff was to give the defendant a bill of sale to the property with-

unincumbered title.   Default was made in payment, and the property was sequestered by the plaintiff.   *Held,*

(1) That it was immaterial whether the contemporaneous agreement and the notes should be construed as a conditional sale, a lease, or a mortgage.  There was nothing in the relief sought by plaintiff that could prejudice the rights of the defendant; and a decree declaring the existence of a lien on the property, and ordering a sale to satisfy it, afforded no ground for reversal.

APPEAL from Bexar.   Tried below before the Hon. Geo. H. Noonan.

The opinion will be understood, when taken in connection with statements of syllabus.

*Ogden & Ogden,* for appellant.

*Tarleton & Boone,* for appellee, cited Act of November 9, 1866; Laws of 11th Leg., 120; Carter *v.* Carter, 5 Tex., 93; Towner *v.* Sayre, 4 Tex., 28; Wallace *v.* Hunt, 22 Tex., 647; Herman on Chattel Mort., pp. 47, 57; Fairbanks *v.* Bloomfield, 2 Duer, 349; Wharf *v.* Howell, 5 Binn., 99; Nash *v.* Driscoe, 51 Me., 457.   See, also, 30 N. II., 531; 16 Vt., 525; 13 Ill., 147; 52 N. H., 319; 36 Ga., 454; 53 Mo., 470; 13 Pick., 282; 44 Vt., 516; Morris *v.* Nixon, 1 How., 118; Wyman *v.* Babcock, 19 How., 287; Jones on Mort., vol. 1, sec. 101; Jerome *v.* Hopkins, 2 Mich., 96–100; Salinas *v.* Wright, 11 Tex., 572.

WALKER, P. J. COM. APP.— The record in this case begins by setting out the first amended petition of the plaintiff, the St. Louis Type Foundry, filed November 18, 1878.   This amended petition sets forth a cause of action against A. C. Abacock, the defendant, on ten several promissory notes which were alleged to have been executed and delivered by the defendant to plaintiff in pursuance of a written contract which was set forth in the petition.   The plaintiff alleged the legal effect of the written contract to be a mortgage on the Alamo Printing Works, including all type, presses, cases and office fixtures, and prayed for a sequestration against that property, and for judgment against the defendant on the notes, with a decree of foreclosure against the property.

The defendant, on the same day, filed his first amended original answer.   His defense was that he had paid $173.60 on the notes sued on, which the plaintiff has not credited on them, and that the three notes which (after allowing credits on those which had fallen due) remained unpaid were not due when the plaintiff caused the property to be seized under sequestration.   (The writ and seizure here

referred to had reference doubtless to such proceedings had under the original petition at some date previous to the filing of the amended petition; but the pleadings and record do not disclose anything concerning it.)

The amended answer alleged that the written contract sued on by plaintiff, and which he treated as a mortgage, was not a mortgage, but an absolute sale of the property to him. The answer alleged a wrongful seizure of his property, and in reconvention sought to recover damages therefor. At the same time the defendant filed his first supplemental answer. Although it was designated by that name, the matter contained in it constituted it virtually a part of the amended answer. It contained a general demurrer, and special exceptions to the plaintiff's amended petition; also a general denial, and a special denial of a lease by him of the property in question under the written contract; alleging that the same was intended to evidence a purchase and sale of the property, and denied that the plaintiff had any lien or mortgage on the property.

The defendant's demurrer and exceptions were not presented to the court for consideration. The evidence of the plaintiff tended to show that it was the intention of the parties to the written contract to make it what it was designated in the instrument as being, a lease of the property to defendant for sixteen months, and an agreement at the end of that time to convey it to him absolutely in case the notes were promptly paid, according to the stipulations of the contract. The defendant's evidence tended to show that the defendant understood it to be a contract for the absolute sale of the property to him.

The court rendered judgment for the plaintiff for $612.24, with interest; decreed that the plaintiff held a valid lien on the property described, and foreclosing it, with an order to sell the same in satisfaction of the judgment.

Among other grounds of error defendant assigned the following: "The court erred in construing the instrument sued on and called a lease, as a mortgage to secure the payment of money."

If it be conceded as true that under the evidence the court was in error in the construction given to the written contract as giving to the plaintiff a lien upon the property, as though the instrument were in legal effect a mortgage, the only counterconstruction of it under which the defendant can, it would seem, be entitled, under the evidence, to complain of the judgment of foreclosure, or of the seizure of the property under a writ of sequestration by the plaintiff, would be that the written contract was neither a mere lease of

the property, nor yet a conditional sale, but that it was an instrument which, according to the other facts in evidence, had the effect to invest him with the absolute title to the property, as under a valid conveyance or deed.

Thus, on the hypothesis that it was a contract of renting the property for sixteen months, it must be noticed that the instrument contained a clause distinctly providing for the forfeiture of his rights as lessee whenever he failed to pay the rental notes as they respectively fell due, and expressly providing that the plaintiff might enter and take possession of the property without notice, which it was agreed the defendant would peaceably give. The defendant did make default in the payment of the notes; the plaintiff was entitled to the possession at once thereafter of the property, and if in this suit he caused the property to be seized under a writ of sequestration, neither his own misapprehension of the true legal effect of the instrument, and consequent designation and treatment of it as a mortgage to secure the notes, nor the court's misconstruction of it to the same end, have the effect to impair the plaintiff's right to the possession, and to cause it to be taken peaceably under the contract of lease, if such it really was in legal effect; nor, on the other hand, would such misinterpretation by the plaintiff and the court have the effect to extend rights to the defendant which he otherwise did not possess under a lease such as is being supposed. The defendant cannot predicate a right which has been lost by his own default, and the forfeiture provided for, as above stated, upon the mistaken proceedings, if such they were, to seize and sell its own property for the satisfaction of the defendant's debt.

The same reasons and illustrations given with respect to the lease theory are applicable to the hypothesis that the transaction was a conditional sale. If it was such, the defendant failing to comply with the conditions as to the payments to be made of the notes, he would be subject to the same legal consequences and results under the contract as we have supposed in the hypothetical case of lease. The property being in either case the plaintiff's, and the plaintiff being entitled to its possession without notice to defendant, the defendant's injury from the plaintiff's sequestration and foreclosure would be nothing in legal contemplation,—" *damnum absque injuria.*"

Whatever else the written contract may have imported, it is quite certain that it was not an absolute sale on its face, and also that its terms were such as negatived its being such. Parol evidence could not have been admitted, consistently with the rules of law, which

could have so far varied the terms and their plain meaning as to have made it an absolute sale.

It follows, from the views we have expressed, that if the instrument was not a mortgage in legal effect, the defendant occupies a position in which he could not be injured under the evidence in the case, and upon the issues formed by the parties, by its being construed as a mortgage by the court.

We think, under the evidence, the plaintiff either had a lien on the property, or else was the owner, and entitled to take possession of it. If the former, the defendant cannot complain; if the latter, his complaints on account of the plaintiff's sacrifice of his own property, in order to pay the defendant's debt, must be regarded as captious and not to prevail to the reversal of the court's decree.

The merits of the questions sought to be presented on the rulings of the court which were reserved in the bill of exceptions do not, we think, require serious consideration, if the grounds of error assigned were even more definite and specific than they are. They are too vague and general to require us to attempt to determine upon, and decide, the precise point involved in the rulings which are embodied in the bills of exceptions, which the appellant may have in mind. The irregularities complained of, if such they were,— and it really does not appear with distinctness what special act was done or permitted to be done by the court that was violative of proper practice,— do not appear to have been of a character to injure the defendant's rights upon the trial.

We are of opinion that the judgment ought to be affirmed.

AFFIRMED.

[Opinion approved June 1, 1883.]